UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP E. DeBLASIO

                     Plaintiff,

                     -v.-

DOCTOR WILLIAMS, CORRECTIONAL OFFICER
SIMON, CORRECTIONAL OFFICER JOHN DOE #1,
and CORRECTIONAL OFFICER JOHN DOE #2,

                     Defendants.

19 Civ. 201 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

## BACKGROUND

Plaintiff filed the Complaint in this action, *pro se,* on January 8, 2019. (Dkt. #2 ("Compl.")). He filed an *in forma pauperis* ("IFP") application the same day. (Dkt. #1). According to the Complaint, on December 21, 2018, Plaintiff was verbally harassed by Correction Officer Simon while in CAPS ("Clinical Alternative to Punitive Segregation") at the Anna M. Kross Center ("AMKC") on Rikers Island. (*Id.* at 4). Doctor Williams, two John Doe correction officers, and at least one other inmate were also present. (*Id.*). According to Plaintiff, Officer Simon harassed him about a recent incident where Plaintiff was attacked by another inmate, which attack left Plaintiff with several injuries. (*Id.*). Eventually, the two John Doe Officers joined Officer Simon in harassing Plaintiff. (*Id.*). In response, Plaintiff complained to Doctor Williams, the Director of CAPS. (Id.). Doctor Williams responded that Plaintiff should "man up." (*Id.*). This comment made Plaintiff go "berserk," throwing garbage and other things around the room. (*Id.*). John Doe Officer #1, still present in the

room, told another inmate to attack Plaintiff for going "berserk." (*Id.*). The inmate complied, punching Plaintiff in the back of the head and his face several times. (*Id.*).

Plaintiff alleges that "the Administration promotes this sort of inmate policing supported by the rough cops that supervise it all." (Compl. 4-5). In addition, he states that inmates are too violent; that he cannot tolerate it any longer; and that he "needs help." (*Id.* at 5). In terms of relief, Plaintiff requests that the CAPS program be terminated, the aforementioned correction officers be enjoined from working with mental health patients, and he be awarded $3 million in damages. (*Id.*).

On October 1, 2019, the Court granted Plaintiff's IFP application. (Dkt. #6). On February 28, 2020, defendants Doctor Williams and Correction Officer Simon (together, "Defendants"), filed a pre-motion letter to discuss Defendants' contemplated motion to revoke Plaintiff's IFP status and to dismiss the Complaint. (Dkt. #20).[1] Subsequently, on March 5, 2020, the Court ordered Plaintiff "to respond to [Defendants'] letter on or before March 31, 2020." (Dkt. #21). Plaintiff failed to respond, and, on May 15, 2020, Defendants requested that the Court stay discovery pending resolution of Defendants' anticipated motion to revoke Plaintiff's IFP status and dismiss the Complaint. (Dkt. #23). On May 18, 2020, the Court stayed discovery and extended Plaintiff's time to

---

[1]   The two John Doe defendants have not been identified. (*See* Dkt. #17, 18).

2

respond to Defendants' letter seeking to revoke his IFP status, to June 29, 2020.  (Dkt. #24).  To date, the Court has not heard from Plaintiff.[2]

## DISCUSSION

The Prison Litigation Reform Act provides that:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [IFP] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  Accordingly, this statute bars prisoners from commencing IFP actions where, while incarcerated, the prisoner abused the federal judicial process by filing three or more actions or appeals that were dismissed as either malicious, frivolous, or for failure to state a claim upon which relief could be granted.  *See id.*

Notably, in its recent decision in *Lomax* v. *Ortiz-Marquez*, 140 S. Ct. 1721, 1724-25 (2020), the Supreme Court held that any dismissal for failure to state a claim, with or without prejudice, counts as a strike under § 1915(g).  In determining whether a previous action brought by a prisoner constitutes a strike under § 1915(g), the Second Circuit has consistently held that trial courts may use docket sheets.  *Harris* v. *City of New York*, 607 F.3d 18, 23 (2d Cir. 2010) (citing two Second Circuit cases that accepted docket sheets when

---

[2]   The Court has not heard from Plaintiff since May 31, 2019, when he wrote to the Court to provide his new mailing address.  (*See* Dkt. #4).

determining what constitutes strikes). The docket sheets, however, must clearly indicate that the prior actions were dismissed under one of the three grounds. *Id.* at 23-24.

Plaintiff has accumulated at least three strikes under § 1915(g): (i) *DeBlasio* v. *Dunbar, et al.*, No. 18 Civ. 8204 (LLS) (S.D.N.Y.) (dismissed December 18, 2018); (ii) *DeBlasio* v. *Kareem*, No. 18 Civ. 6843 (LLS) (S.D.N.Y.) (dismissed February 19, 2019); (iii) *DeBlasio* v. *Halleck*, No. 18 Civ. 6975 (LLS) (S.D.N.Y.) (dismissed October 22, 2018); and (iv) *DeBlasio* v. *Moriarty*, No. 09-0278-pr (2d Cir. Nov. 20, 2009) (appeal dismissed as frivolous). Because it is sufficiently clear, based on the court dockets, that Plaintiff has filed at least three actions that were dismissed for failure to state a claim, he has accumulated three strikes under the IFP statute.

Plaintiff has not responded to contest application of § 1915(g) to this case. However, his strongest argument in opposition to the application of such statute would be based on the imminent danger exception to the three strikes rule. *See Pettus* v. *Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009). To show such nexus, the plaintiff must assert that: (i) that the imminent danger of serious physical injury is fairly traceable to unlawful conduct asserted in the complaint; and (ii) that a favorable judicial outcome would redress that injury. *Id.* at 298-99. For purposes of the filing bar, an imminent danger is not one "that has dissipated by the time a complaint is filed," *Pettus*, 554 F.3d at 296; rather, it must be one "existing at the time the complaint is filed," *Malik* v. *McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002). *See also Lewis* v. *Huebner*, No. 17

4

Civ. 8101 (KMK), 2019 WL 1236299, at *5 (S.D.N.Y. Mar. 18, 2019) (granting defendants' motion to revoke IFP status principally because plaintiff's allegations only described past incidents of assault, rather than future or ongoing assaults, that appeared to have dissipated when the complaint was filed).  A threat has dissipated when the plaintiff merely alleges incidents in the past without establishing that, at the time of filing, "they are ongoing or likely to continue in the future[.]"  *Antrobus* v. *Dapecevic*, No. 17 Civ. 5840 (KMK), 2018 WL 3242272, at *5 (S.D.N.Y. July 3, 2018).  Moreover, to satisfy this exception, a plaintiff's allegations of imminent danger must be specific, not merely conclusory or speculative.  *Id.* at *4.

Plaintiff cannot meet the imminent danger exception.  As an initial matter, Plaintiff has not alleged ongoing, imminent danger specific to the inmate and correction officers who allegedly participated in the December 21, 2018 incident.  *See Lewis*, 2019 WL 1236299, at *4-5 (granting defendants' motion to revoke IFP status principally because plaintiff's allegations against the defendants only described past incidents of assault, rather than future or ongoing assaults).  More importantly, to the extent that Plaintiff claims that he is endangered by "inmate policing supported by the rough cops that supervise it all" (Compl. 4-5), such broad and unspecific allegations do not articulate a real and proximate threat of harm and, therefore, do not satisfy the imminent danger exception.  *See Burgess* v. *Conway*, 631 F. Supp. 2d 280, 283 (W.D.N.Y. 2009) (granting defendants' motion to dismiss because plaintiff "simply allege[d] that he has been assaulted in the past, and there [were] no allegations

5

in the complaint indicating that another attack is imminent"); *Pettus* v. *Mangano*, No. 05 Civ. 1834 (RJD), 2005 WL 1123761, at *1 (E.D.N.Y. May 9, 2005) (barring plaintiff's access to IFP status because plaintiff merely alleged the dangerousness of maximum security prisons and that he "faces potential danger at the hands of other inmates"). For example, Plaintiff fails to identify who the "rough cops" are, or specifically how "inmate policing" is likely to cause him future harm. *See Antrobus*, 2018 WL 3242272, at *4-5 (explaining that plaintiff's allegation of being threatened was speculative and conclusory because he never identified who threatened him and the substance of the threat). Even read liberally, which the Court does because of Plaintiff's *pro se* status, the Complaint fails to identify any specific future danger faced by Plaintiff. Accordingly, Plaintiff cannot meet the imminent danger exception.

## CONCLUSION

For the reason explained above, Plaintiff's Complaint is dismissed. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: July 28, 2020
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Philip E. DeBlasio
NYSID: 04489407Y
DIN No: 19-A-0070
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582-0010